SEALED

FILED

Jun 22, 2023

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

PHILLIP A. TALBERT
United States Attorney
KIMBERLY A. SANCHEZ
JUSTIN J. GILIO
Assistant United States Attorneys
ROBERT VENEMAN-HUGHES
Special Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

## IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>1) MARTIN ALFREDO LEIVA-LEIVA,<br>    aka "Dark," aka "Dar,"<br>2) JOSE RENE BARRERA-MARTINEZ,<br>    aka "Fugitivo,"<br>3) ANGEL ANTONIO DIAZ-MORALES,<br>    aka, "Pecador,"<br>4) LUIS FAUSINO DIAZ-PINEDA,<br>    aka "Furioso," aka, "Minero,"<br>5) JUAN CARLOS URIAS-TORRES,<br>    aka "Grande," aka, "Master,"<br>6) ANGEL ANTONIO CASTRO-ALFARO,<br>    aka "Tony Weed," Aka, "Discipulo,"<br>7) JOSE JOAQUIN ORELLANA,<br>    aka "Soberbio,"<br>8) JULIO CESAR RECINOS-SORTO,<br>9) JOSE ARMANDO TORRES-GARCIA,<br>    aka "Driver," and<br>10) JOSE SANTOS HERNANDEZ-OTERO,<br>    aka "Doble"<br><br>    Defendants. | CASE NO. 1:22-CR-00232-JLT-SKO<br><br>18 U.S.C. § 1962(d) – Conspiracy to Participate in a Racketeering Enterprise; 18 U.S.C. § 1959(a)(1) – Murder in Aid of Racketeering (6 Counts) |

## F I R S T   S U P E R S E D I N G   I N D I C T M E N T

GENERAL ALLEGATIONS

At all times relevant to this Indictment:

### The Racketeering Enterprise: Mara Salvatrucha (MS-13)

1.      Mara Salvatrucha ("MS-13") is a criminal organization whose members and associates engaged in drug trafficking and acts of violence, including acts involving murder, extortion, kidnapping, and assault.

2.      Since the mid-1980's, MS-13 has operated throughout California, Washington D.C., Nevada, New York, Central America, Mexico, and elsewhere.  Some of MS-13's operations during this time period took place in Mendota, California, Eastern District of California.

3.      MS-13, including its leaders, members, and associates, constitutes an "enterprise," as defined in Title 18, United States Code, Sections 1959(b)(2) and 1961(4) ("the enterprise"), that is, a group of individuals associated in fact that engages in and the activities of which affect interstate and foreign commerce.  The enterprise constitutes an ongoing organization whose members function as a continuing unit for a common purpose of achieving the objectives of the enterprise.

4.      The defendants:

      a)      MARTIN ALFREDO LEIVA-LEIVA, aka "Dark," aka "Dar,"

      b)      JOSE RENE BARRERA-MARTINEZ, aka "Fugitivo,"

      c)      ANGEL ANTONIO DIAZ-MORALES, aka, "Pecador,"

      d)      LUIS FAUSINO DIAZ-PINEDA, aka "Furioso," aka, "Minero,"

      e)      JUAN CARLOS URIAS-TORRES, aka "Grande," aka, "Master,"

      f)      ANGEL ANTONIO CASTRO-ALFARO, aka "Tony Weed," aka, "Discipulo,"

      g)      JOSE JOAQUIN ORELLANA, aka "Soberbio,"

      h)      JULIO CESAR RECINOS-SORTO,

      i)      JOSE ARMANDO TORRES-GARCIA, aka "Driver," and

      j)      JOSE SANTOS HERNANDEZ-OTERO, aka "Doble"

were members and associates of MS-13.

///

///

Formation

5. MS-13 is largely comprised of persons from Central America, including El Salvador, Honduras, and Guatemala. In Mendota, California, MS-13 subsets Vatos Locos Salvatruchas (VLS) and Park View Locos Salvatruchas (PVLS) both fall under the larger MS-13 transnational criminal organization, and are aligned with cliques from Los Angeles, California.

Membership

6. MS-13 operates through subsets, mentioned above, known as "cliques," which are usually named for a street within a clique's territory, or for the neighborhood in which the clique operates. MS-13 has approximately 20 cliques operating in Los Angeles, including, but not limited to, "Parkview," "Vatos Locos Salvatruchos," and "Francis Locos."

7. A clique adds new members through an initiation ritual known as "jumping in," during which several existing MS-13 members beat up a prospective MS-13 member for 13 seconds. Once jumped in, an MS-13 member is expected to participate fully in MS-13's criminal activities.

Command Structure

8. The MS-13 Enterprise in Mendota, CA has a hierarchy. The lowest of the members of the MS-13 Enterprise are referred to as "Paros." Paros take orders from higher ranking Enterprise members and are responsible for doing errands and committing crimes on behalf of the gang. Chequeos also take orders from higher ranking Enterprise members. Chequeos are also responsible for fighting with rival gang members and expanding the Enterprise's territory. Paros and Chequeos take orders from "Homeboys." Homeboys are leaders, or shot callers, in the Enterprise and direct Enterprise activity.

9. "Homeboys" control the gang's activities, despite often times not being located in the same city. Homeboys influence that gang's activity remotely through communicating with other members through phone calls and social media communications. They decide if and when a murder occurs and which gang members can be involved in the crime. Homeboys also make decisions that impact Enterprise membership, such as whether or not new members are added, and what members can be promoted.

10. In Mendota, the primary rival to MS-13 is the Bulldogs criminal street gang. The MS-13 cliques in Mendota, CA view the Bulldogs as a threat to the El Salvadoran community and regularly

participate in patrols to attack Bulldog gang members. The MS-13 Enterprise uses the violence to expand its control of Mendota and to rid the town of rival gangs. Mid-ranking MS-13 Enterprise members in Mendota, known as "Chequeos" often respond to requests through social media from non-Enterprise affiliated El Salvadorans who are being harassed by rival gangs, including the Bulldogs. Chequeuos will respond to these requests and intimidate or attack the rival gang member. MS-13 Enterprise members in Mendota believe that by doing this they earn the trust and respect of the El Salvadoran community and deter reporting by the community to law enforcement of crimes committed by MS-13 Enterprise members.

11.    MS-13 Enterprise members in Mendota must follow clearly established rules of the Enterprise or face discipline.

12.    MS-13 Enterprise members in Mendota often receive instructions from higher ranking Enterprise members in Los Angeles, Santa Maria, and Oakland. Many times, these instructions involve traveling to Los Angeles or Oakland to support the Enterprise's agenda, including conducting assaults, helping wanted subjects travel to escape law enforcement, and transporting drugs and firearms on behalf of the Enterprise.

13.    MS-13 members write or paint graffiti in the areas they control to identify the area as controlled by MS-13.

14.    Narcotics sales provide the bulk of MS-13's profits. Individual MS-13 members who sell narcotics are often required to provide a portion of their narcotics proceeds to the shot caller of the clique. This money is used by the shot caller for a variety of purposes, including paying the clique's rent to the overall MS-13 leader, paying legal fees for MS-13 members in need, helping MS-13 members in need in El Salvador and other points abroad, and purchasing weapons that are maintained by the clique in their territory. If a clique member earns money for the clique by selling drugs or other criminal ventures, and contributes a portion to the shot caller, this money is oftentimes considered their rent contribution to the clique.

15.    MS-13 also derives income from the extortion of street and food vendors who operate in MS-13 controlled territory. On a clique level, the clique shot caller identifies targets for extortion and coordinates which clique member is authorized to collect extortion from each vendor. MS-13 extorts

both legitimate and illegitimate businesses alike, though MS-13 tends to focus on illegitimate or "grey-market" businesses. These businesses are often owned or run by illegal immigrants, who rarely report this extortion to law enforcement, despite the threats of violence which accompany the extortion.

Codes of Conduct

16.    MS-13 has a self-imposed code of conduct, which is imposed and enforced to maintain compliance among its members. MS-13 enforces its rules and promotes discipline among its members by imposing monetary fines and threatening and committing acts of violence against members who break the rules. This is known as being "courted" or "regulated." MS-13, through its leadership or individual cliques, can vote for MS-13 members to be disciplined for violating MS-13's rules or code of conduct. Depending on the severity of the violation, MS-13, through its leadership or individual cliques, will decide whether the violator will receive a beating for 13, 26, or 39 seconds, all multiples of 13, and will select at least three to four MS-13 members to administer the beatings, with one member counting aloud the seconds. The premise underlying these punishments is that a person who broke a rule should be punished by beatings for either 13 seconds, or for a multiple of 13 seconds. Additionally, for even more serious violations of MS-13's rules, MS-13, through its leadership or individual cliques, may vote to introduce weapons into the beatings, to include knives, bats and/or pipes. Once an MS-13 member has been disciplined, the individual cliques may also vote to eject the disciplined member from their cliques. If a member is voted out of the clique, he/she must be "jumped out" of the clique, which means that member will receive another beating. However, that member may join a different MS-13 clique, if the new clique votes to accept that member. To join a new clique, that member must be "jumped in," or beaten for a designated period of time, usually 13 seconds.

17.    MS-13 has zero tolerance for members and associates who cooperate with law enforcement. Once MS-13 has evidence that someone has cooperated with law enforcement, by receiving and reviewing law enforcement reports or videos of interviews, MS-13 issues a "green light" as to that person, which is an order that if any MS-13 member sees the person who is allegedly or actually cooperating with law enforcement, that person is to be killed on sight.

18.    MS-13 members also engage in acts of violence against innocent citizens and rival gang members in their territory. Participation in violent acts increases the respect accorded to members who

commit violent acts. Additionally, commission of violent acts by MS-13 members enhances the gang's overall reputation for violence in the community, resulting in the intimidation of citizens in MS-13's territory.

Purposes of the Enterprise

19.    The purposes of the Enterprise include, but are not limited to, the following:

a)    Enriching the members and associates of the Enterprise through, among other things, gun sales, narcotics sales, and extortion, as well as the remittance of proceeds generated as a result of MS-13's criminal activities (referred to as "taxes"), and conducting other profit-driven illegal activities in Fresno County and elsewhere;

b)    Preserving, promoting, and protecting the power, territory, and profits of MS-13 and its members and associates, through threats of violence and actual acts of violence, including acts involving murder, extortion, and assault;

c)    Maintaining MS-13's control and authority over its territory, and over illegal activities occurring in MS-13 "territory" within Fresno County, California, including keeping the public-at-large in fear of the Enterprise, and in fear of its members and associates through violence and threats of violence;

d)    Protecting MS-13 members and associates who have committed crimes, by hindering, obstructing, and preventing law enforcement officers from identifying, apprehending, and successfully prosecuting and punishing the offenders; and

e)    Violently retaliating against rival gang members or perceived outsiders who have challenged MS-13's authority, disrespect MS-13 members and associates, or who failed to pay debts owed to MS-13 members and associates

Methods and Means used by MS-13

20.    The means and methods by which MS-13 leaders, members, and associates conduct and participate in the conduct of the affairs of the criminal enterprise include the following:

a)    Members of the Enterprise and their associates committed, attempted, conspired, and threatened to commit acts of violence, including murder, kidnapping, extortion, and drug trafficking to protect and expand the Enterprise's criminal operations.

b)      Members of the Enterprise and their associates promoted a climate of fear through violence and threats of violence.

c)      Members of the Enterprise and their associates used and threatened to use physical violence against rival gang members, neighborhood residents and visitors, and to violently discipline insubordinate members of the Enterprise;

d)      Members of the Enterprise and their associates engaged in extortion of local businesses.

e)      Members of the Enterprise and their associates trafficked in various controlled substances, including marijuana, methamphetamine, and prescription drugs.

f)      Members and associates of the Enterprise frequently engaged in the aforementioned criminal activity in the presence of other MS-13 gang members and/or associates to enhance the status within MS-13 of those affirmatively conducting criminal acts; and

g)      Members and associates of the Enterprise used various techniques to avoid law enforcement scrutiny of the Enterprise's criminal activities and to evade and frustrate law enforcement, such as the use of coded language to discuss criminal activities, the use of internet-based methods of communication, movement of MS-13 members and associates from Mendota to other areas and from other areas to Mendota when wanted by law enforcement, and other counter-surveillance techniques.

<u>Symbols</u>

21.     MS-13 members sometimes signify their membership with tattoos reading "Mara Salvatrucha," "MS," "MS-13," or other variations of the gang's name.  MS-13 members typically refer to other members by their monikers, or nicknames, and often do not know fellow gang members' legal names.

22.     Some members of the VLS and PVLS have admitted their gang membership to local detectives, and a number of the VLS and PVLS members have tattoos that reflect Enterprise affiliation. These tattoos include words and symbols that refer to the Mara Salvatrucha Enterprise name, such as "MS," "Vatos Locos," or "Park View," or a reference to being a member of MS-13, such as "MS-13," three dots, skulls, sad/happy faces, 503, 504 or the triangle symbol as seen on the El Salvador flag.

1  COUNT ONE:  [18 U.S.C. § 1962(d) - Conspiracy to Participate in a Racketeering Enterprise]

2        The Grand Jury charges:

3                        The Racketeering Conspiracy

4        23.    The allegations contained in paragraphs 1 through 22 of this Indictment are re-alleged

5  and incorporated herein by reference.

6        24.    Beginning at a date unknown to the Grand Jury, but no later than in or around February

7  23, 2014, and continuing to in or around January 3, 2023, in the State and Eastern District of California,

8  and elsewhere, the defendants,

9                        MARTIN ALFREDO LEIVA-LEIVA,
                            aka "Dark," aka "Dar,"
10                    JOSE RENE BARRERA-MARTINEZ,
                            aka "Fugitivo,"
11                    ANGEL ANTONIO DIAZ-MORALES,
                            aka, "Pecador,"
12                    LUIS FAUSINO DIAZ-PINEDA,
                            aka "Furioso," aka, "Minero,"
13                    JUAN CARLOS URIAS-TORRES,
                            aka "Grande," aka, "Master,"
14                    ANGEL ANTONIO CASTRO-ALFARO,
                            aka "Tony Weed," aka, "Discipulo,"
15                    JOSE JOAQUIN ORELLANA,
                            aka "Soberbio,"
16                    JULIO CESAR RECINOS-SORTO,
                        JOSE ARMANDO TORRES-GARCIA,
17                            aka "Driver," and
                        JOSE SANTOS HERNANDEZ-OTERO,
18                            aka "Doble,"

19  and others known and unknown to the Grand Jury, each being a person employed by and associated with

20  MS-13, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce,

21  did knowingly and intentionally conspire and agree to violate Title 18, United States Code, Section

22  1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of MS-13

23  through a pattern of racketeering activity, which is defined in Title 18, United States Code, Sections

24  1961(1) and (5), which pattern of racketeering activity consisted of:

25            a.    multiple acts involving murder in violation of California Penal Code §§ 187, 182,

26  189, 21a, 31, and 664;

27            b.    multiple acts involving kidnapping in violation of California Penal Code § 207,

28  182, 21a, 31, and 664; and

1        c.     multiple offenses involving drug trafficking in violation of 21 U.S.C. §§ 841, 843,

2 and 846.

3      25.     It was part of the conspiracy that each defendant agreed that a conspirator would commit

4 at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

5 <u>Notice of Special Sentencing Factors</u>

6 <u>Number 1:  Murder of O.A.</u>

7      26.     On or about January 26, 2016, in the County of San Benito, in the Northern District of

8 California, and the Eastern District of California, and elsewhere, the defendants,

9
**MARTIN ALFREDO LEIVA-LEIVA,**
aka "Dark," aka "Dar," and
10
**ANGEL ANTONIO DIAZ-MORALES,**
aka, "Pecador,"
11

12 and others did unlawfully, willfully, and intentionally, and with deliberation and premeditation, kill

13 O.A., with malice aforethought, in violation of California Penal Code Sections 187, 189, and 31.

14 <u>Number 2:  Murder of J.M.</u>

15      27.     On or about July 13, 2016, in the Eastern District of California and elsewhere, the

16 defendants,

17
**MARTIN ALFREDO LEIVA-LEIVA,**
aka "Dark," aka "Dar," and
18
**JUAN CARLOS URIAS-TORRES,**
aka "Grande," aka, "Master,"
19

20 and others did unlawfully, willfully, and intentionally, and with deliberation and premeditation, kill

21 J.M., with malice aforethought, in violation of California Penal Code Sections 187, 189, and 31.

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

Number 3:  Murder of C.E.

28.    On or about October 30, 2016, in the Eastern District of California and elsewhere, the defendants,

MARTIN ALFREDO LEIVA-LEIVA,
aka "Dark," aka "Dar,"
JOSE JOAQUIN ORELLANA,
aka "Soberbio,"
JULIO CESAR RECINOS-SORTO,
JOSE ARMANDO TORRES-GARCIA,
aka "Driver," and
JOSE SANTOS HERNANDEZ-OTERO,
aka "Doble,"

and others did unlawfully, willfully, and intentionally, and with deliberation and premeditation, kill C.E., with malice aforethought, in violation of California Penal Code Sections 187, 189, and 31.

Number 4:  Murder of A.S.

29.    On or about October 30, 2016, in the Eastern District of California and elsewhere, the defendants,

MARTIN ALFREDO LEIVA-LEIVA,
aka "Dark," aka "Dar,"
JOSE JOAQUIN ORELLANA,
aka "Soberbio,"
JULIO CESAR RECINOS-SORTO,
JOSE ARMANDO TORRES-GARCIA,
aka "Driver," and
JOSE SANTOS HERNANDEZ-OTERO,
aka "Doble,"

and others did unlawfully, willfully, and intentionally, and with deliberation and premeditation, kill A.S., with malice aforethought, in violation of California Penal Code Sections 187, 189, and 31.

Number 5:  Murder of J.C.

30.    On or about January 30, 2017, in the Eastern District of California, and elsewhere, the defendants,

MARTIN ALFREDO LEIVA-LEIVA,
aka "Dark," aka "Dar,"
JOSE RENE BARRERA-MARTINEZ,
aka "Fugitivo,"
LUIS FAUSINO DIAZ-PINEDA,
aka "Furioso," aka, "Minero," and
ANGEL ANTONIO CASTRO-ALFARO,
aka "Tony Weed," aka, "Discipulo,"

and others did unlawfully, willfully, and intentionally, and with deliberation and premeditation, kill J.C.,

1  with malice aforethought, in violation of California Penal Code Sections 187, 189, and 31.

2  Number 6:  Murder of A.A.

3    31.    On or about December 13, 2017, in the Eastern District of California, and elsewhere, the

4  defendants,

5  MARTIN ALFREDO LEIVA-LEIVA,
   aka "Dark," aka "Dar," and
6  JUAN CARLOS URIAS-TORRES,
   aka "Grande," aka, "Master,"
7

8  and others did unlawfully, willfully, and intentionally, and with deliberation and premeditation, kill

9  A.A., with malice aforethought, in violation of California Penal Code Sections 187, 189, and 31.

10  Number 7:  Conspiracy to distribute and possess with intent to distribute methamphetamine

11    32.    Beginning on a date unknown to the Grand Jury, but no later than in or around January

12  2016 and continuing through at least in or around August 2018, in the State and Eastern District of

13  California, and elsewhere, defendants,

14  MARTIN ALFREDO LEIVA-LEIVA,
   aka "Dark," aka "Dar,"
15  JOSE RENE BARRERA-MARTINEZ,
   aka "Fugitivo,"
16  ANGEL ANTONIO DIAZ-MORALES,
   aka, "Pecador,"
17  LUIS FAUSINO DIAZ-PINEDA, AKA "FURIOSO,"
   aka, "Minero,"
18  JUAN CARLOS URIAS-TORRES,
   aka "Grande," aka, "Master,"
19  ANGEL ANTONIO CASTRO-ALFARO,
   aka "Tony Weed," aka, "Discipulo,"
20  JOSE JOAQUIN ORELLANA,
   aka "Soberbio,"
21  JULIO CESAR RECINOS-SORTO,
   JOSE ARMANDO TORRES-GARCIA,
22  aka "Driver," and
   JOSE SANTOS HERNANDEZ-OTERO,
23  aka "Doble,"

24  did conspire with each other, and with others known and unknown to the Grand Jury, to knowingly and

25  intentionally distribute and possess with intent to distribute 500 grams and more of a mixture or

26  substance containing a detectible amount of methamphetamine, and 50 grams and more of

27  methamphetamine, and a mixture or substance containing a detectible amount of cocaine, Schedule II

28

controlled substances, in violation of Title 21, United States Code, Sections 846 and 841(a)(1), (b)(1)(A).

33.     All in violation of Title 18, United States Code, Section 1962(d).

COUNT TWO:  [18 U.S.C. §§ 1959(a)(1) and 2 – Murder in Aid of Racketeering]

The Grand Jury charges:

MARTIN ALFREDO LEIVA-LEIVA,
aka "Dark," aka "Dar," and
ANGEL ANTONIO DIAZ-MORALES,
aka, "Pecador,"

as follows:

34.     Paragraphs 1 through 22 are re-alleged and incorporated herein by reference.

35.     MS-13, through its members and associates, engaged in racketeering activity as defined in 18 U.S.C. §§ 1959(b)(1) and 1961(1), that is acts involving murder, kidnapping and extortion in violation of the California Penal Code, and offenses involving drug trafficking in violation of 21 U.S.C. §§ 846, 843, and 841.

36.     On or about January 26, 2016, in the County of San Benito, in the Northern District of California, and the Eastern District of California, and elsewhere, for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, the defendants, MARTIN ALFREDO LEIVA-LEIVA, aka "Dark," aka "Dar," and ANGEL ANTONIO DIAZ-MORALES, aka, "Pecador,", together with others known and unknown, unlawfully and knowingly, murdered O.A., in violation of California Penal Code Sections 31, 187, and 189.

37.     All in violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

COUNT THREE: [18 U.S.C. §§ 1959(a)(1) and 2 – Murder in Aid of Racketeering]

The Grand Jury further charges:

MARTIN ALFREDO LEIVA-LEIVA,
aka "Dark," aka "Dar," and
JUAN CARLOS URIAS-TORRES,
aka "Grande," aka, "Master,"

as follows:

38.     Paragraphs 1 through 22 and 35 are re-alleged and incorporated herein by reference.

39.    On or about July 13, 2016, in the County of Fresno, within the Eastern District of California and elsewhere, for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, the defendants, MARTIN ALFREDO LEIVA-LEIVA, aka "Dark," aka "Dar," and JUAN CARLOS URIAS-TORRES, aka "Grande," aka, "Master," together with others known and unknown, unlawfully and knowingly, murdered J.M., in violation of California Penal Code Sections 31, 187, and 189.

40.    All in violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

COUNT FOUR:  [18 U.S.C. §§ 1959(a)(1) and 2 – Murder in Aid of Racketeering]

The Grand Jury further charges:

MARTIN ALFREDO LEIVA-LEIVA,
aka "Dark," aka "Dar,"
JOSE JOAQUIN ORELLANA,
aka "Soberbio,"
JULIO CESAR RECINOS-SORTO,
JOSE ARMANDO TORRES-GARCIA,
aka "Driver," and
JOSE SANTOS HERNANDEZ-OTERO,
aka "Doble,"

as follows:

41.    Paragraphs 1 through 22 and 35 are re-alleged and incorporated here by reference.

42.    On or about October 30, 2016, in the County of Fresno, within the Eastern District of California and elsewhere, for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity the defendants, MARTIN ALFREDO LEIVA-LEIVA, aka "Dark," aka "Dar," JOSE JOAQUIN ORELLANA, aka "Soberbio," JULIO CESAR RECINOS-SORTO, JOSE ARMANDO TORRES-GARCIA, aka "Driver," and JOSE SANTOS HERNANDEZ-OTERO, aka "Doble," together with others known and unknown, unlawfully and knowingly, murdered C.E., in violation of California Penal Code Sections 31, 187, and 189.

43.    All in violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

///
///
///
///

1  COUNT FIVE: [18 U.S.C. §§ 1959(a)(1) and 2 – Murder in Aid of Racketeering]

2      The Grand Jury further charges:

3                    MARTIN ALFREDO LEIVA-LEIVA,
                         aka "Dark," aka "Dar,"
4                    JOSE JOAQUIN ORELLANA,
                          aka "Soberbio,"
5                    JULIO CESAR RECINOS-SORTO,
                     JOSE ARMANDO TORRES-GARCIA,
6                        aka "Driver," and
                     JOSE SANTOS HERNANDEZ-OTERO,
7                          aka "Doble,"

8  as follows:

9      44.    Paragraphs 1 through 22 and 35 are re-alleged and incorporated here by reference.

10     45.    On or about October 30, 2016, in the County of Fresno, within the Eastern District of

11 California and elsewhere, for the purpose of gaining entrance to and maintaining and increasing position

12 in MS-13, an enterprise engaged in racketeering activity, the defendants, MARTIN ALFREDO LEIVA-

13 LEIVA, aka "Dark," aka "Dar," JOSE JOAQUIN ORELLANA, aka "Soberbio," JULIO CESAR

14 RECINOS-SORTO, JOSE ARMANDO TORRES-GARCIA, aka "Driver," and JOSE SANTOS

15 HERNANDEZ-OTERO, aka "Doble," together with others known and unknown, unlawfully and

16 knowingly, murdered A.S., in violation of California Penal Code Sections 31, 187, and 189.

17     46.    All in violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

18 COUNT SIX: [18 U.S.C. §§ 1959(a)(1) and 2 – Murder in Aid of Racketeering]

19     The Grand Jury further charges:

20                   MARTIN ALFREDO LEIVA-LEIVA,
                        aka "Dark," aka "Dar,"
21                   JOSE RENE BARRERA-MARTINEZ,
                          aka "Fugitivo,"
22                   LUIS FAUSINO DIAZ-PINEDA,
                     aka "Furioso," aka, "Minero," and
23                   ANGEL ANTONIO CASTRO-ALFARO,
                     aka "Tony Weed," aka, "Discipulo,"
24

25 as follows:

26     47.    Paragraphs 1 through 22 and 35 of this Indictment are re-alleged and incorporated by

27 reference.

28

INDICTMENT                                    14

48.     On or about January 30, 2017, in the County of Fresno, within the Eastern District of California and elsewhere, for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, the defendants, MARTIN ALFREDO LEIVA-LEIVA, aka "Dark," aka "Dar," JOSE RENE BARRERA-MARTINEZ, aka "Fugitivo," LUIS FAUSINO DIAZ-PINEDA, aka "Furioso," aka "Minero," and ANGEL ANTONIO CASTRO-ALFARO, aka "Tony Weed," aka, "Discipulo," together with others known and unknown, unlawfully and knowingly, murdered J.C., in violation of California Penal Code Sections 31, 187, and 189.

49.     All in violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

COUNT SEVEN:  [18 U.S.C. §§ 1959(a)(1) and 2 – Murder in Aid of Racketeering]

The Grand Jury further charges:

MARTIN ALFREDO LEIVA-LEIVA,
aka "Dark," aka "Dar," and
JUAN CARLOS URIAS-TORRES,
aka "Grande," aka, "Master,"

as follows:

50.     Paragraphs 1 through 22 and 35 are re-alleged and incorporated here by reference.

51.     On or about December 13, 2017, in the County of Fresno, within the Eastern District of California and elsewhere, for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, the defendants, MARTIN ALFREDO LEIVA-LEIVA, aka "Dark," aka "Dar," and JUAN CARLOS URIAS-TORRES, aka "Grande," aka, "Master," together with others known and unknown, unlawfully and knowingly, murdered A.A., in violation of California Penal Code Sections 31, 187, and 189.

52.     All in violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

NOTICE OF SPECIAL FINDINGS

53.     The allegations of Counts Two, Three, Four, Five, Six, and Seven of this Indictment are hereby re-alleged and incorporated herein by reference.

Defendant MARTIN ALFREDO LEIVA-LEIVA, aka "Dark," aka "Dar":

a)     Was 18 years of age or older at the time of the offense (18 U.S.C. §3591(a));

b)     Intentionally killed O.A. (18 U.S.C. § 3591(a)(2)(A));

c)      Intentionally killed J.M. (18 U.S.C. § 3591(a)(2)(A));

d)      Intentionally killed C.E. (18 U.S.C. § 3591(a)(2)(A));

e)      Intentionally killed A.S. (18 U.S.C. § 3591(a)(2)(A));

f)      Intentionally killed J.C. (18 U.S.C. § 3591(a)(2)(A));

g)      Intentionally killed A.A. (18 U.S.C. § 3591(a)(2)(A));

h)      Intentionally inflicted serious bodily injury that resulted in the death of O.A. (18 U.S.C. § 3591(a)(2)(B));

i)      Intentionally inflicted serious bodily injury that resulted in the death of J.M. (18 U.S.C. § 3591(a)(2)(B));

j)      Intentionally inflicted serious bodily injury that resulted in the death of C.E. (18 U.S.C. § 3591(a)(2)(B));

k)      Intentionally inflicted serious bodily injury that resulted in the death of A.S. (18 U.S.C. § 3591(a)(2)(B));

l)      Intentionally inflicted serious bodily injury that resulted in the death of J.C. (18 U.S.C. § 3591(a)(2)(B));

m)      Intentionally inflicted serious bodily injury that resulted in the death of A.A. (18 U.S.C. § 3591(a)(2)(B));

n)      Intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than a participant in the offense, and O.A., J.M., C.E., A.S., J.C., and A.A. died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

o)      Intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than a participant in the offense, such that participation in the act constituted a reckless disregard for human life, and O.A., J.M., C.E., A.S., J.C., and A.A. died as a direct result of the act (18 U.S.C. § 3591(a)(2)(D));

p)      Committed the offense after substantial planning and premeditation to cause the death of O.A. (18 U.S.C. § 3592(c)(9));

q)      Committed the offense after substantial planning and premeditation to cause the

1  death of J.M. (18 U.S.C. § 3592(c)(9));

2          r)     Committed the offense after substantial planning and premeditation to cause the

3  death of C.E. (18 U.S.C. § 3592(c)(9));

4          s)     Committed the offense after substantial planning and premeditation to cause the

5  death of A.S. (18 U.S.C. § 3592(c)(9));

6          t)     Committed the offense after substantial planning and premeditation to cause the

7  death of J.C. (18 U.S.C. § 3592(c)(9));

8          u)     Committed the offense after substantial planning and premeditation to cause the

9  death of A.A. (18 U.S.C. § 3592(c)(9)).

10  Defendant JOSE RENE BARRERA-MARTINEZ, aka "Fugitivo":

11          a)     Was 18 years of age or older at the time of the offense (18 U.S.C. §3591(a));

12          b)     Intentionally killed J.C. (18 U.S.C. § 3591(a)(2)(A));

13          c)     Intentionally inflicted serious bodily injury that resulted in the death of J.C. (18

14  U.S.C. § 3591(a)(2)(B));

15          d)     Intentionally participated in an act, contemplating that the life of a person would

16  be taken or intending that lethal force would be used in connection with a person, other than a

17  participant in the offense, and J.C. died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

18          e)     Intentionally and specifically engaged in an act of violence, knowing that the act

19  created a grave risk of death to a person, other than a participant in the offense, such that

20  participation in the act constituted a reckless disregard for human life, and J.C. died as a direct

21  result of the act (18 U.S.C. § 3591(a)(2)(D));

22          f)     Committed the offense after substantial planning and premeditation to cause the

23  death of J.C. (18 U.S.C. § 3592(c)(9)).

24  Defendant ANGEL ANTONIO DIAZ-MORALES, aka, "Pecador":

25          a)     Was 18 years of age or older at the time of the offense (18 U.S.C. §3591(a));

26          b)     Intentionally killed O.A. (18 U.S.C. § 3591(a)(2)(A));

27          c)     Intentionally inflicted serious bodily injury that resulted in the death of O.A. (18

28  U.S.C. § 3591(a)(2)(B));

d)      Intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than a participant in the offense, and O.A. died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

e)      Intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than a participant in the offense, such that participation in the act constituted a reckless disregard for human life, and O.A. died as a direct result of the act (18 U.S.C. § 3591(a)(2)(D));

f)      Committed the offense after substantial planning and premeditation to cause the death of O.A.  (18 U.S.C. § 3592(c)(9)).

Defendant LUIS FAUSINO DIAZ-PINEDA, aka "Furioso," aka, "Minero":

a)      Was 18 years of age or older at the time of the offense (18 U.S.C. §3591(a));

b)      Intentionally killed J.C. (18 U.S.C. § 3591(a)(2)(A));

c)      Intentionally inflicted serious bodily injury that resulted in the death of J.C. (18 U.S.C. § 3591(a)(2)(B));

d)      Intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than a participant in the offense, and J.C. died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

e)      Intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than a participant in the offense, such that participation in the act constituted a reckless disregard for human life, and J.C. died as a direct result of the act (18 U.S.C. § 3591(a)(2)(D));

f)      Committed the offense after substantial planning and premeditation to cause the death of J.C.  (18 U.S.C. § 3592(c)(9)).

Defendant JUAN CARLOS URIAS-TORRES, aka "Grande," aka, "Master":

a)      Was 18 years of age or older at the time of the offense (18 U.S.C. §3591(a));

b)      Intentionally killed J.M. (18 U.S.C. § 3591(a)(2)(A));

c)      Intentionally killed A.A. (18 U.S.C. § 3591(a)(2)(A));

d)      Intentionally inflicted serious bodily injury that resulted in the death of J.M. (18

1  U.S.C. § 3591(a)(2)(B));

2       e)    Intentionally inflicted serious bodily injury that resulted in the death of A.A. (18

3  U.S.C. § 3591(a)(2)(B));

4       f)    Intentionally participated in an act, contemplating that the life of a person would

5  be taken or intending that lethal force would be used in connection with a person, other than a

6  participant in the offense, and J.M. died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

7       g)    Intentionally participated in an act, contemplating that the life of a person would

8  be taken or intending that lethal force would be used in connection with a person, other than a

9  participant in the offense, and A.A. died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

10       h)    Intentionally and specifically engaged in an act of violence, knowing that the act

11  created a grave risk of death to a person, other than a participant in the offense, such that

12  participation in the act constituted a reckless disregard for human life, and J.M. died as a direct

13  result of the act (18 U.S.C. § 3591(a)(2)(D));

14       i)    Intentionally and specifically engaged in an act of violence, knowing that the act

15  created a grave risk of death to a person, other than a participant in the offense, such that

16  participation in the act constituted a reckless disregard for human life, and A.A. died as a direct

17  result of the act (18 U.S.C. § 3591(a)(2)(D));

18       j)    Committed the offense after substantial planning and premeditation to cause the

19  death of J.M.  (18 U.S.C. § 3592(c)(9)).

20       k)    Committed the offense after substantial planning and premeditation to cause the

21  death of A.A.  (18 U.S.C. § 3592(c)(9)).

22  Defendant ANGEL ANTONIO CASTRO-ALFARO, aka "Tony Weed," aka, "Discipulo":

23       a)    Was 18 years of age or older at the time of the offense (18 U.S.C. §3591(a))

24       b)    Intentionally killed J.C. (18 U.S.C. § 3591(a)(2)(A));

25       c)    Intentionally inflicted serious bodily injury that resulted in the death of J.C. (18

26  U.S.C. § 3591(a)(2)(B));

27       d)    Intentionally participated in an act, contemplating that the life of a person would

28  be taken or intending that lethal force would be used in connection with a person, other than a

participant in the offense, and J.C. died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

       e)     Intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than a participant in the offense, such that participation in the act constituted a reckless disregard for human life, and J.C. died as a direct result of the act (18 U.S.C. § 3591(a)(2)(D));

       f)     Committed the offense after substantial planning and premeditation to cause the death of J.C.  (18 U.S.C. § 3592(c)(9))

Defendant JOSE JOAQUIN ORELLANA, aka "Soberbio":

       a)     Was 18 years of age or older at the time of the offense (18 U.S.C. §3591(a));

       b)     Intentionally killed C.E. (18 U.S.C. § 3591(a)(2)(A));

       c)     Intentionally killed A.S. (18 U.S.C. § 3591(a)(2)(A));

       d)     Intentionally inflicted serious bodily injury that resulted in the death of C.E. (18 U.S.C. § 3591(a)(2)(B));

       e)     Intentionally inflicted serious bodily injury that resulted in the death of A.S. (18 U.S.C. § 3591(a)(2)(B));

       f)     Intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than a participant in the offense, and C.E. and A.S. died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

       g)     Intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than a participant in the offense, such that participation in the act constituted a reckless disregard for human life, and C.E. and A.S. died as a direct result of the act (18 U.S.C. § 3591(a)(2)(D));

       h)     Committed the offense after substantial planning and premeditation to cause the death of C.E.  (18 U.S.C. § 3592(c)(9));

       i)     Committed the offense after substantial planning and premeditation to cause the death of A.S.  (18 U.S.C. § 3592(c)(9));

Defendant JULIO CESAR RECINOS-SORTO:

      a)     Was 18 years of age or older at the time of the offense (18 U.S.C. §3591(a));

      b)     Intentionally killed C.E. (18 U.S.C. § 3591(a)(2)(A));

      c)     Intentionally killed A.S. (18 U.S.C. § 3591(a)(2)(A));

      d)     Intentionally inflicted serious bodily injury that resulted in the death of C.E. (18 U.S.C. § 3591(a)(2)(B));

      e)     Intentionally inflicted serious bodily injury that resulted in the death of A.S. (18 U.S.C. § 3591(a)(2)(B));

      f)     Intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than a participant in the offense, and C.E. and A.S. died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

      g)     Intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than a participant in the offense, such that participation in the act constituted a reckless disregard for human life, and C.E. and A.S. died as a direct result of the act (18 U.S.C. § 3591(a)(2)(D));

      h)     Committed the offense after substantial planning and premeditation to cause the death of C.E.  (18 U.S.C. § 3592(c)(9));

      i)     Committed the offense after substantial planning and premeditation to cause the death of A.S.  (18 U.S.C. § 3592(c)(9));

Defendant JOSE ARMANDO TORRES-GARCIA, aka "Driver":

      a)     Was 18 years of age or older at the time of the offense (18 U.S.C. §3591(a));

      b)     Intentionally killed C.E. (18 U.S.C. § 3591(a)(2)(A));

      c)     Intentionally killed A.S. (18 U.S.C. § 3591(a)(2)(A));

      d)     Intentionally inflicted serious bodily injury that resulted in the death of C.E. (18 U.S.C. § 3591(a)(2)(B));

      e)     Intentionally inflicted serious bodily injury that resulted in the death of A.S. (18 U.S.C. § 3591(a)(2)(B));

f)      Intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than a participant in the offense, and C.E. and A.S. died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

g)      Intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than a participant in the offense, such that participation in the act constituted a reckless disregard for human life, and C.E. and A.S. died as a direct result of the act (18 U.S.C. § 3591(a)(2)(D));

h)      Committed the offense after substantial planning and premeditation to cause the death of C.E.  (18 U.S.C. § 3592(c)(9));

i)      Committed the offense after substantial planning and premeditation to cause the death of A.S.  (18 U.S.C. § 3592(c)(9));

Defendant JOSE SANTOS HERNANDEZ-OTERO, aka "Doble":

a)      Was 18 years of age or older at the time of the offense (18 U.S.C. §3591(a));

b)      Intentionally killed C.E. (18 U.S.C. § 3591(a)(2)(A));

c)      Intentionally killed A.S. (18 U.S.C. § 3591(a)(2)(A));

d)      Intentionally inflicted serious bodily injury that resulted in the death of C.E. (18 U.S.C. § 3591(a)(2)(B));

e)      Intentionally inflicted serious bodily injury that resulted in the death of A.S. (18 U.S.C. § 3591(a)(2)(B));

f)      Intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than a participant in the offense, and C.E. and A.S. died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

g)      Intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than a participant in the offense, such that participation in the act constituted a reckless disregard for human life, and C.E. and A.S. died as a direct result of the act (18 U.S.C. § 3591(a)(2)(D));

h)    Committed the offense after substantial planning and premeditation to cause the death of C.E. (18 U.S.C. § 3592(c)(9));

i)    Committed the offense after substantial planning and premeditation to cause the death of A.S. (18 U.S.C. § 3592(c)(9)).

A TRUE BILL.

/s/ Signature on file w/AUSA
_____
FOREPERSON

PHILLIP A. TALBERT
United States Attorney

# KIRK E. SHERRIFF
_____
KIRK E. SHERRIFF
Assistant United States Attorney
Chief, Fresno Office