IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

MARTIN ALFREDO LEIVA-LEIVA,

Defendant.

Case No. 1:22-CR-00232-BLW-EPG

**MEMORANDUM DECISION AND ORDER**

## INTRODUCTION

The Government seeks to impose the death penalty upon the Defendant, Martin Lieva Leiva. The Government alleges that Mr. Leiva Leiva, as the leader of an MS-13 clique in Mendota, California, participated in six murders in aid of racketeering between January 2016 and December 2017.

"In determining whether a sentence of death is justified for a homicide offense, the jury shall consider whether any aggravating factors support such a drastic penalty." *U.S. v. Gendron*, 183 F.4th 162, 167 (2d Cir. 2026) (cleaned up and internal quotations omitted) (citing 18 U.S.C. §§ 3592(c), 3593(e)). 18 U.S.C. § 3592(c) enumerates sixteen aggravating factors for the jury to consider.

Before the Court is the Government's Motion for Reconsideration. Dkt. 734. The Government moves the Court to reconsider its decision to strike 18 U.S.C. § 3592(c)(9), the statutory aggravating factor for substantial planning and premeditation, as to the individual identified as Victim 4. *See* Dkt. 720 at 26. Victim 4 allegedly was a bystander that was murdered along with Victim 3, the individual targeted by MS-13. For the reasons stated below, the Court denies the motion.

## BACKGROUND

On June 22, 2026, the Court heard several challenges from Mr. Leiva Leiva to the Government's decision to seek the death penalty against him. Relevant here, Mr. Leiva Leiva moved to strike various statutory and non-statutory aggravating factors from the Notice of Intent to Seek the Death Penalty (Dkt. 369), including the statutory aggravator for "commit[ing] the offense after substantial planning and premeditation" as to all six Victims. *See* 18 U.S.C. § 3592(c)(9).

The Court determined that because the Government alleged Mr. Leiva Lieva "engaged in advanced discussion about the murders of [Victims 1, 2, 3, 5, and 6]—including providing specific reasons and explicit orders for their killings[, a] jury could reasonably find the substantial planning and premeditation aggravator as to each of these offenses." Dkt. 720 at 25. However, as to Victim 4, the Court

determined that an alleged general order from Mr. Leiva Leiva to kill any witnesses could not support the substantial planning aggravator. *Id*. at 25-26. The Court therefore struck the aggravator only as to Victim 4. *Id*. at 26.

## LEGAL STANDARD

The Court must first determine whether it can properly consider the Government's motion. "Reconsideration is an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'" *U.S. v. Partida-Vargas*, 2012 WL 12906089 at *1 (E.D. Cal. Apr. 25, 2012) (quoting *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003)). "While the Federal Rules of Criminal Procedure do not contain a provision specifically allowing motions for reconsideration, numerous circuit courts have held that motions for reconsideration may be filed in criminal cases." *U.S. v. Tolmosoff*, 2024 WL 211483 at *1 (E.D. Cal. May 10, 2024) (citing *U.S. v. Martin*, 226 F.3d 1042, 1047 n.7 (9th Cir. 2000)).

The Eastern District of California's Local Rules contemplate motions for reconsideration in criminal cases. Local Rule 430.1(i) states:

> Whenever any motion has been granted or denied in whole or in part, and a subsequent motion for reconsideration is made upon the same or any alleged different set of facts, see L.R. 303, it shall be the duty of counsel to present to the Judge or Magistrate Judge to whom such subsequent motion is made an affidavit or brief, as appropriate, setting forth the material facts and circumstances surrounding each motion for

which reconsideration is sought, including:

> (1) when and to what Judge or Magistrate Judge the prior motion was made;
>
> (2) what ruling, decision or order was made thereon; and
>
> (3) what new or different facts or circumstances are claimed to exist that did not exist or were not shown upon such prior motion or what other grounds exist for the motion.

L.R. 430.1(i). The Government and Mr. Leiva Leiva dispute whether the Government's argument, that the Court erred in its interpretation of Section 3592(c)(9), may properly be considered under the "other grounds" portion of the Local Rule.

The Court concludes that this motion is appropriate under the "other grounds" provision. "Both 'simple mistakes' and 'shifting precedent' might justify reconsideration of a nonfinal order." *U.S. v. Louangamath*, 2021 WL 5989756 at *2 (E.D. Cal. Dec. 17, 2021). Courts in this District have decided motions for reconsideration that allege clear error in statutory analysis. *See Wiechers v. Moore*, 2014 WL 1922237 at *2 (E. D. Cal. May 14, 2014); *U.S. v. Iron Mountain Mines, Inc.*, 812 F. Supp. 1528, 1555-56 (E.D. Cal. 1992). Accordingly, the Court will not deny the motion out of hand.

## ANALYSIS

In order to seek the death penalty, the Government "must file a pretrial notice 'stating that . . . the circumstances of the offense' justify a capital sentence and specifying which 'aggravating factor or factors' it 'proposes to prove.'" *U.S. v. Savage*, 970 F.3d 217, 288 (3d Cir. 2020) (quoting 18 U.S.C. § 3593(a)). On August 7, 2025, the Government filed its Notice of Intent to Seek the Death Penalty. Dkt. 369. Relevant to this decision, the Notice states as follows:

> 3. As to Victim 3 (Count Four):
> . . .
> b. MARTIN ALFREDO LEIVA-LEIVA committed the offense after substantial planning and premeditation to cause the death of a person.
>
> 4. As to Victim 4 (Count Five):
> a. MARTIN ALFREDO LEIVA-LEIVA committed the offense after substantial planning and premeditation to cause the death of a person.
> . . .

*Id*. at 3. This closely tracks the statutory language, which states that the jury shall consider the listed aggravating factors noticed by the Government to determine which aggravators, if any, exist. The listed aggravators include that the defendant "committed the offense after substantial planning and premeditation to cause the death of a person or commit an act of terrorism." 18 U.S.C. § 3592(c)(9).

The Government points out that throughout Section 3592(c), the phrase "the victim" is used in some subsections, whereas others, including subsection (c)(9),

uses "a person." Thus, it argues, it properly alleged the aggravator as to Victim 4 when Mr. Leiva Leiva substantially planned for the killing of Victim 3, during which Victim 4 was killed as well, and the Court erred in interpreting the plain language of the statute by incorrectly requiring the substantial planning to relate to the killing of Victim 4 specifically.

The scope of Section 3592(c)(9)'s applicability does not appear to have been addressed by the Ninth Circuit. The Government cites authority from the Third and Tenth Circuits—*U.S. v. Savage*, 970 F.3d 217 (3d Cir. 2020) and *U.S. v. McCullah*, 76 F.3d 1087 (10th Cir. 1996).

In *Savage*, Mr. Savage, the leader of a regional drug distribution organization who was jailed pending trial for numerous offenses, ordered his enforcers to firebomb the house of a former associate-turned-cooperator, who was also in jail. 970 F.3d at 232-34. The firebombing was intended to occur when the cooperator's mother and brother were inside. *Id*. at 234. The enforcers carried out the firebombing and succeeding in doing so—killing, in addition to the cooperator's mother and brother, four additional family members that, unbeknownst to the enforcers and Mr. Savage, were present in the house. *Id*. at 235. The jury found Mr. Savage guilty of VICAR conspiracy to commit murder for all six individuals killed in the firebombing, and after hearing aggravating and

mitigating factors under Section 3592, determined that Mr. Savage be sentenced to death. *Id*. at 236

One of the challenges Mr. Savage brought against his sentence related to the aggravating factors applied to him. *Id*. at 280-82. The Third Circuit rejected his argument, and used provisions of Section 3592(c) to illustrate its point that the aggravating factors brought against him did not rely on whether the actual victim was the intended victim, stating:

> Savage's aggravating factors do not rely on whether the actual victim was the intended victim . . . . For instance, one aggravating factor refers to "substantial planning and premeditation to cause the death of *a person*" . . . . The statutory language does not imply that the "person" must be an intended victim . . . .

*Id*. at 282 (quoting 18 U.S.C. § 3592(c)(9)) (emphasis original).

*Savage* therefore stands for the proposition that Section 3592(c)(9) does not require the person whose death was substantially planned be the one who is actually killed, if the actual victim died because they was simply an innocent caught in the line of fire, of a well-thought out and planned murder. However, that is not the circumstance here, where an independent decision was made at the scene to murder Victim No. 4, pursuant to the gang's "leave no witnesses" policy, not as the end result of substantial planning.

Thus, even accepting *Savage's* proposition that the Government does not

have to demonstrate substantial planning of Victim 4's killing specifically, there is a separate question of whether the substantial planning of Victim 3's homicide may be attributed to the distinct, separately charged homicide of Victim 4 that was not accomplished through the planned scheme, but rather was the product of the circumstances and a standing order to ensure no witnesses.

*McCullah* is useful to illustrate this distinction from *Savage*. In *McCullah*, another drug-distribution organization intended to kill a man named Avery Rogers, the owner of a used car lot that the organization suspected of stealing a pickup truck carrying nearly 100 kilograms of cocaine. 76 F.3d at 1095. After a failed attempt, the organization dispatched a group of its members along with hired hitmen from California to Oklahoma to kill Mr. Rogers. *Id*. at 1096. The group decided on a plan to send a member to take a test drive of a vehicle for sale with Mr. Rogers. *Id*. That member would drive Mr. Rogers to an ambush site, where the other members would murder him. *Id*.

Mr. McCullah, a member of the group, visited the lot posing as a prospective customer. *Id*. Mr. Rogers accompanied Mr. McCullah on his first test drive. *Id*. Mr. McCullah, satisfied that Mr. Rogers was "going for the bait," returned to the car lot the next day and requested to test drive another car. *Id*. This time, an employee of the lot named Jewell Leon Collins accompanied him on the test drive. *Id*. Mr.

McCullah drove Mr. Collins out to the ambush site, where the group murdered Mr. Collins. *Id*. at 1096-97.

The Tenth Circuit, considering 21 U.S.C. § 848(n)(8), which contained similar language to Section 3592(c)(9)[1], stated that the statute was "not drafted in a victim-specific fashion, nor should it be construed that way . . . . In this case, substantial planning and premeditation resulted in the construction of a deadly encounter, and the fact that the eventual victim was not the intended victim does not alter the fact that the killing of an individual was accomplished by the premediated plan." *Id*. at 1111.

Mr. Collins was killed through the execution of the group's substantially planned scheme to commit a homicide. The plan was to pose as customers of the business belonging to the intended victim, Mr. Rogers, in order to lure him to a predesignated location and murder him. The group followed through on that plan—but it resulted in the death of an unintended victim. Although Mr. Collins was not the group's target, his killing was nevertheless accomplished precisely in accordance with the premediated plan.

---

[1] 21 U.S.C. § 848, the Continuing Criminal Enterprise statute, permits the death penalty in certain circumstances. Section 848(n), which was repealed in 2006, provided the aggravating factors to be considered. The aggravator listed Subsection (n)(8) was that "[t]he defendant committed the offense after substantial planning and premeditation."

Mr. Leiva Leiva's case, however, is different. It did not involve a victim being substituted for the plan's intended target. If MS-13 had mistaken Victim 4 for another individual they were targeting and enacted its plan to murder that individual, resulting in the murder of Victim 4, or if MS-13 knew that Victim 4 was not their target, but opted to carry out their plan and kill Victim 4 anyway, *Savage* and *McCullah* would support the Government's argument.

However, rather than those scenarios, Victim 4 was allegedly murdered as a result of his unexpected presence creating an unforeseen circumstance and a resulting separate decision by the members of MS-13 to commit an additional homicide, pursuant to a general order to kill witnesses. The Court does not read either *Savage* or *McCullah* as establishing that the substantial planning directed towards the accomplishment of one murder satisfies Section 3592(c)(9) for a separately-charged murder of an unanticipated victim targeted as the result of an independent decision made at the scene of the crime. *See U.S. v. Briseño*, 2015 WL 163526 at *10 (N.D. Ind. Jan. 12, 2015) (examining *McCullah* and concluding that substantial planning as an aggravator "means substantial planning for *that* murder.")

The Court does not read *Savage* or *McCullah* to render its decision striking the aggravator as erroneous. The Court therefore denies the motion.

## ORDER

**IT IS ORDERED that t**he Government's Motion for Reconsideration (Dkt. 734) is **DENIED**.

DATED: October 13, 2026

B. Lynn Winmill
U.S. District Court Judge